CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 01 2012

JULIA C. DUDLEY, CLERK
BY:
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DARRELL K. BROWN, | ) |
| | ) |
| Petitioner, | )   Civil Action No. 7:11-cv-00605 |
| | ) |
| v. | )   **MEMORANDUM OPINION** |
| | ) |
| CHRISTOPHER ZYCH, | )   By: Hon. James C. Turk |
| | )   Senior United States District Judge |
| Respondent. | ) |

Darrell K. Brown ("Brown" or "Petitioner"), a federal prisoner proceeding *pro se*, initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Section 2241" or "§ 2241"). In his petition, Brown contends that the Bureau of Prisons ("BOP") is improperly denying him credit against his federal sentence for two periods of time during which he was in state custody: (1) the time between his arrest by state authorities and his federal sentencing; and (2) the time between his federal sentencing and the date he was released from state custody to begin service of his federal sentence.

Respondent filed a motion to dismiss and Brown has responded, making the matter ripe for decision. After reviewing the record and for the reasons set forth herein, the Court **GRANTS** Respondent's Motion to Dismiss, ECF No. 11, and **DENIES** Petitioner's request for § 2241 relief, ECF No. 1. Additionally, the Court **DENIES** a Certificate of Appealability.

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Brown was arrested by Georgia State Patrol officers on August 26, 2003, after he fled from a traffic stop and fired shots at the officers. ECF No. 11, Ex. 1. On December 22, 2003, federal authorities obtained custody of Brown via a writ of habeas corpus ad prosequendum. Id. While he was in borrowed custody on this writ, he was convicted of a number of federal firearm

and drug offenses in the United States District Court for the Northern District of Georgia, Case Number 3:03-cr-22-JTC. He remained in the temporary custody of federal authorities until December 21, 2005, when he was sentenced by U.S. District Judge Jack T. Camp to a total term of imprisonment of 195 months. Id. at Ex. 1-B. The federal judgment was silent as to whether it should run concurrently with or consecutively to any other sentence. Id. Shortly after his federal sentencing, Brown was returned to Georgia authorities, but a federal detainer was lodged against him.

On April 10, 2006, Brown was sentenced by the State of Georgia to a sixteen-year term of imprisonment for various state offenses. He was released from state custody on June 19, 2009, and pursuant to the federal detainer, the BOP obtained custody over him. He commenced service of his federal sentence on that date. Id. at Ex. 1-D. His projected release date is November 6, 2023. Id. at Ex. 1-E. The BOP did not credit his federal sentence for any of the time he was in state custody, i.e., before June 19, 2009. All of that time, however—from the date of his arrest until he was paroled from state custody—counted toward service of his state sentence. Id. at Ex. 1-C.

After receiving his projected release date, Brown filed a complaint with the BOP requesting credit for time served against his state sentence. Pursuant to Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990), the BOP interpreted that complaint? as a request for *nunc pro tunc* designation of the place where Brown served his state sentence as the place for service of his federal sentence. Specifically, the BOP has a Program Statement explaining that the BOP may consider an inmate's request for credit for time served on a state sentence after federal sentencing as a request for a retroactive designation of the state facility. BOP Program Statement 5160.05 (January 16, 2003), attached as Ex. 1-F to ECF No. 11. If the BOP grants the relief and

designates a state facility as a place where a prisoner can serve his federal sentence, the designation can be made effective retroactive to the date of federal sentencing and essentially results in credit against the federal sentence for time served on the state sentence. Pursuant to that policy, the BOP wrote to Brown's federal sentencing court to ascertain the sentencing judge's position on the issue. ECF No. 11 at Ex. 1-G.

Chief Judge Carnes responded:

> Judge Camp has now retired, but I have conferred with the probation officer who prepared the Presentence Report and who was present at the sentencing: Jan M. Kay. She has confirmed that it was then-Judge Camp's stated intention that Mr. Brown receive credit for time served in the state institution. She indicates that the conduct underlying the state sentence was the same as that underlying the federal charges. Further, Ms. Kay notes that, in the spirit of USSG § 5G1.3(b)(2), Mr. Brown should receive this constructive credit.
>
> She does indicate her uncertainty whether you are empowered to credit a defendant for the time he served in state custody prior to the imposition of a federal sentence (here, 12/26/03-12/20/05), but assumes you would be authorized to credit a defendant for the time served from the date of his federal sentence (here 12/20/05) to the date of his release to federal custody (here, 6/19/09). . . .
>
> I defer to your determination as to the extent of your statutory authority to credit the state time. Further, based on the above representations, I have no opposition to you giving Mr. Brown credit for the time that he served in state custody, if you deem that to be appropriate and to be authorized by law. As the conduct underlying both the state and federal convictions appears to be the same—and indeed, the state and federal courts imposed essentially the same sentence for this conduct—crediting the state time served would seem to be fair. Further, this appears to be in accord with the wishes of the sentencing judge.

Id.

The BOP interpreted this letter as "not opposing" the credit, but deferring to the BOP to decide. It then denied Brown's request for a *nunc pro tunc* designation, citing the nature and

3

circumstances of his instant offense and his extensive criminal history. ECF No. 11, at Ex. 1, ¶¶ 14-15 and Ex. 1-I. Brown's § 2241 petition followed.

## II.  DISCUSSION

### A.  28 U.S.C. § 2241

Section § 2241 provides a basis for relief for prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Fourth Circuit has recognized that "challenges to the execution of a federal sentence are properly brought under § 2241." United States v. Little, 392 F.3d 671, 679 (4th Cir. 2004) (citations omitted); id. (a federal prisoner's "request for sentencing credit is properly brought under § 2241"). A § 2241 petitioner seeking judicial review of the execution of his sentence "should name his warden as respondent and file the petition in the district of confinement." Id. at 680 (quoting Rumsfeld v. Padilla, 542 U.S. 426, 447 (2004)); 28 U.S.C. § 2242 (a §2241 petition should name as respondent "the person who has custody over [the prisoner]."). Here, Brown has properly exhausted his administrative remedies[1] and this Court has jurisdiction over Brown's custodian, Respondent Christopher Zych.[2]

### B.  Petitioner's Claims for Sentence Credit

In his § 2241 petition, Brown asserts two ground for relief. First, he contends that he should receive credit against his federal sentence for the time from his arrest on August 26, 2003 through June 19, 2009, when he was released by the state on parole. ECF No. 1 at 4. In a second—and apparently alternative—ground for relief, he contends that he should at least be

---

[1] Respondents acknowledge that Petitioner has exhausted his administrative remedies. ECF No. 11 at 2.

[2] Christopher Zych is the Warden of the United States Penitentiary, Lee County, Virginia ("USP Lee"), where Brown was incarcerated at the time he filed his petition. ECF No. 1 at 1; ECF No. 11 at 1. Lee County is located within the Western District of Virginia. 28 U.S.C. § 127(b).

4

given credit for the time from the imposition of his federal sentence—December 21, 2005—until his release from state custody.

In calculating Brown's term of imprisonment and determining whether there are periods for which credit should be given, the Court is guided by both 18 U.S.C. §§ 3584 and 3585. Section 3585 provides:

> (a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–
>
>> (1) as a result of the offense for which the sentence was imposed; or
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585.

Section 3584 discusses the authority of district courts to impose concurrent or consecutive sentences. Section 3584(a) contains several presumptions that govern how to determine whether a sentence is concurrent with or consecutive to another sentence. As pertinent here, it provides that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."[3]

---

[3] There is some question as to whether this presumption would apply here. In United States v. Smith, 472 F.3d 222, 226 (4th Cir. 2006), the Fourth Circuit held, in part, that the presumption of consecutive sentences "does not take effect unless a court imposes a sentence after a defendant is already subject to an undischarged term of imprisonment." Under that rule, the presumption would not apply here. However, United States v. Setser, 132 S. Ct. 1463, 1470 (2012) overruled the primary holding in Smith, which was that a federal court had no authority to order that its sentence run consecutively to, or concurrently with,

5

Applying those statues here, and starting with § 3585(a), Respondent contends, and the Court agrees, that Brown's "federal sentence commenced on June 19, 2009, the day he was released from his state sentence to the federal detainer for service of his federal sentence." (ECF No. 11 at 4.) That is, it was not until he completed service of his state sentence that Brown was released to federal custody. As the Fourth Circuit has explained, "[a] federal sentence does not commence until the Attorney General receives the defendant into her 'custody' for service of that sentence." United States v. Evans, 159 F.3d 908, 911 (4th Cir. 1998) (citing 18 U.S.C. § 3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody....")).

Significantly, the time a state prisoner spends "on loan" to federal authorities pursuant to a writ of habeas corpus ad prosequendum does not serve to interrupt the state's custody over an inmate. Put differently, custody is not transferred to the federal authorities and

> [a] federal sentence does not begin to run . . . when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus ad prosequendum. Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation. See Thomas v. Whalen, 962 F.2d 358, 361 n. 3 (4th Cir. 1992); Thomas v. Brewer, 923 F.2d 1361, 1366-67 (9th Cir. 1991) (producing state prisoner under writ of habeas corpus ad prosequendum does not relinquish state custody).

Id. at 912; see also id. (noting that the rule "derives from the fact that the federal writ of habeas corpus ad prosequendum merely loans the prisoner to federal authorities" and does not

---

an anticipated future sentence. Setser did not directly speak to the Smith holding regarding §3584(a)'s presumptions, because those presumption apply only when the federal judgment is silent on the issue of concurrent versus consecutive sentences, and the judgment in Setser was not silent on the issue. But the reasoning of Setser at least calls into question the reasoning of the Smith court on that issue. In any event, the Court's conclusions herein would be the same regardless of whether Smith's holding regarding presumptions remains good law or not.

"transform[] a state prisoner into a federal prisoner") (citations omitted). Thus, Brown remained in state custody until he was released from that custody pursuant to the federal detainer. Thus, the BOP has properly calculated his sentence as beginning then, pursuant to Section 3585(a).

There is also no argument that any credit is due to him under Section 3585(b). The final sentence of § 3585(b) makes clear that credit is due for the specified periods only if that time "has not been credited against another sentence." See also United States v. Wilson, 503 U.S. 329, 333 (1992) (inmates are not entitled to double credit for time spent in detention prior to sentencing). Here, however, it is undisputed that the entire period for which Brown seeks credit was credited toward his state sentence. Thus, 18 U.S.C. § 3585(b) does not entitle Brown to relief.

There exists the possibility, as noted in Evans and recognized by the parties here, that "[w]hen a federal court imposes a sentence on a defendant who is already in state custody, the federal sentence may commence if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence. See Barden v. Keohane, 921 F.2d 476, 481-82 (3d Cir. 1990); 18 U.S.C. § 3621(b) (vesting designation authority in the Bureau of Prisons)." Evans, 59 F.3d at 911-912. As discussed above, this is generally accomplished by the BOP designating, *nunc pro tunc*, a state facility to serve as a place where a prisoner can serve his federal sentence, pursuant to 18 U.S.C. § 3621(b).[4] see also BOP Program Statement 5160.05.

The Supreme Court has recently discussed the interplay of § 3584 and § 3621, emphasizing that "3621(b) cannot be read to give the Bureau of Prisons exclusive authority to make the sort of decision committed to the district court in § 3584(a). When § 3584(a)

---

[4] Section 3621(b) requires the Bureau of Prisons to "designate the place of the prisoner's imprisonment" and to consider several listed factors.

7

specifically addresses decisions about concurrent and consecutive sentences, and makes no mention of the Bureau's role in the process, the implication is that no such role exists." United States v. Setser, 132 S. Ct. 1463, 1470 (2012).[5] The Setser Court rejected the Government's assertion that the BOP was not bound by the default rules in § 3584(a) and that it could apply them as "a matter of discretion," calling it "implausible that the effectiveness of . . . § 3584(a)'s prescription . . . depends upon the 'discretion' of the Bureau." Setser, 132 S. Ct. at 1469 n.3; see also Jones v. United States, No. 12-3049, 2012 WL 2883706, at *4 (D. Kan. July 13, 2012) (noting same and concluding that "[i]t is plain that the BOP has no authority to execute a federal sentence as concurrent to state sentences, when a federal sentencing court has imposed its sentence as consecutive").

Although Setser left undisturbed the BOP's statutory authority to designate a state facility as a place to serve a federal sentence under § 3621, the Setser court explained that the authority to so designate does not constitute the authority to make a decision about concurrency or consecutive sentences in the first instance, which lies with the district court. Instead, that Court explained that the BOP has a role to play particularly where late-onset facts materially alter a prisoner's position and make it difficult to implement his sentence, because it is the BOP who "ultimately has to determine how long [a district court's] sentence authorizes it to continue [a prisoner's] confinement." Id. at 1473. But in Setser, the possibility that Setser's federal and state sentences might run concurrently was a direct result of the federal court judgment: Setser was

---

[5] Setser resolved a split in the U.S. Courts of Appeals and held that a federal district court has authority to impose a sentence to run consecutively or concurrently to a state sentence that is anticipated, but has not yet been imposed. The facts there were that the federal sentencing judge had ordered that Setser's federal sentence run concurrently with one state sentence but consecutively to another, both of which had yet to be imposed. The state court later decided that both state sentences should run concurrently, rendering execution of the federal district court's instructions impossible. 132 S. Ct. at 1466-67. The Supreme Court nonetheless upheld the sentence.

8

"free to urge the Bureau to credit his time served in state court *based on the District Court's judgment that the federal sentence run concurrently with the state sentence for the new drug charges.*" Id. (emphasis added). If the BOP declined to do so, Setser would be free to seek a writ of habeas corpus pursuant to § 2241, although the Setser court "express[ed] no view on whether those proceedings would be successful." Id.

Thus, the authority to make a retroactive designation, and to effectively make two sentences run concurrently, does not exist independently of a federal court judgment that is properly interpreted as requiring some amount of concurrency. Understandably, then, post-Setser courts faced with habeas challenges have upheld the BOP's refusal to make a *nunc pro tunc* designation under § 3621(b), under facts similar to those here, i.e., where (1) the federal judgment is silent on whether a federal sentence runs concurrent with or consecutive to a later-imposed state sentence; and (2) the sentencing court, in response to a Barden-type inquiry from the BOP, has not explicitly directed how the sentences should be administered.

In Loveless v. Ziegler, 2012 WL 3614315, at *4 (S.D.W. Va. Aug. 21, 2012), for example, the habeas petitioner was arrested by state authorities, sentenced in federal court, and then sentenced in state court. The state sentence was ordered to run concurrent with the federal sentence, while the federal sentencing order was silent as to whether it should run concurrent with or consecutive to any other sentence. After the BOP denied the petitioner's request for a *nunc pro tunc* designation, he filed a habeas petition challenging that decision. In denying the petition, the district court rejected the petitioner's argument that the BOP's decision under 18 U.S.C. § 3621 is an "impermissible encroachment upon the sentencing authority typically vested in the judicial branch." Id. at *4. On this issue, the Loveless court expressly invoked the Supreme Court's reasoning in Setser, concluding:

9

> The Setser decision . . . made clear that the BOP's *nunc pro tunc* decision-making authority under § 3621(b) is not an exercise of sentencing authority, but a "determin[ation] [of] how long the District Court's sentence authorize[s] it to continue [the defendant's] confinement." [132 S. Ct.] at 1473. Thus, the Court considered the respective roles of the BOP and the judiciary, and it cast no doubt on the propriety of the BOP making independent determinations of whether to retroactively designate a state facility for service of a prisoner's federal sentence pursuant to the five factors listed in § 3621(b).

2012 WL 3614315, at * 4. On the facts before it, the Loveless Court determined that the BOP did not act unlawfully in denying Loveless's request for a retroactive designation.

Other cases are in accord. See, e.g., Heddings v. Garcia, No. 11-1346, 2012 WL 3186477, *2 (10th Cir. Aug. 7, 2012) (unpublished) (BOP did not abuse its discretion in denying request for *nunc pro tunc* designation where federal court stated, post-judgment, that it was "absolutely opposed," and where the BOP also relied on the nature of the offenses and the presumption of consecutive sentences in 18 U.S.C. § 3584(a)); Newman v. Cozza-Rhodes, No. 11-cv-03262, 2012 WL 1931551, *4-5 (D. Colo. May 29, 2012) (denying § 2241 petition challenging BOP's denial of *nunc pro tunc* designation where federal judgment and federal sentencing court were silent on the issue); Elwell v. Fisher, No. 11-2595, 2012 WL 2277850, at *5 (D. Minn. Apr. 25, 2012) (report and recommendation by U.S. Magistrate Judge), adopted by Elwell v. Fisher, No. 11-2595, 2012 WL 2277858 (D. Minn. June 18, 2012) (unpublished), (where federal judgment was silent and the sentencing court did not respond to a request for its input as to a retroactive designation request, the BOP properly treated the sentence as consecutive, based on the default rules in 18 U.S.C. § 3584(a)); see also Cole v. Thomas, No. 3:12-cv-412, 2012 WL 3542586, *4 (D. Or. Apr. 16, 2012) (findings and recommendation of U.S. Magistrate Judge), adopted by Cole v. Thomas, No. 3:12-cv-412, 2012 WL 3536808 (D. Or. Aug. 15, 2012), ("Nothing in Setser prohibits the BOP from interpreting a judgment which is

silent as to whether a sentence is to operate concurrently or consecutively . . ." and upholding BOP's refusal to grant sentence credit pursuant to § 3621(b)); Hardin v. United States, No. 7:12-cv-1818, 2012 WL 3945314, at *2 n.4 (D.S.C. Sept. 10, 2012) (although the Setser court "did not address situations . . . where the sentencing court is silent on the issue" of whether a sentence should operate concurrently or consecutively, "[r]ecent decisions suggest that the Bureau of Prisons still has the authority to 'designate the place of imprisonment under § 3621'") (citations omitted); Lee v. Wilson, No. 1:11cv981, 2012 WL 3069407, at *9 (E.D. Va. July 26, 2012) (upholding BOP's refusal to grant credit where federal court judge was asked and responded that he thought the sentences should run concurrently, and where the presumption in 3584(a) led to consecutive sentences, and where the BOP properly considered the other factors in § 3621(b)).

As one court explained: "The BOP correctly determined that because the federal sentencing court was silent of [sic] the issue of concurrency, and there was a yet to be imposed state sentence, 18 U.S.C. § 3584(a) and BOP Program Statement 5880.28 directed that the sentences were consecutive. . . . The BOP administered the sentence as provided in the statute, it did not exercise sentencing discretion." Elwell, 2012 WL 2277850, at * 9.

If the presumption in § 3584(a) applies here based on the silence of the federal judgment, rendering the sentences consecutive,[6] then it is clear that Brown's federal sentence should run consecutive to his state sentence. But, even if the presumption does not apply here, then the judgment is simply unclear, and the BOP retained authority to determine how best to execute Brown's sentence and to determine whether it should run concurrent with or consecutive to his state sentence. See Lee, 2012 WL 3069407, at *9 (upholding BOP's decision under § 3621

---

[6] See supra note 3 (discussing Smith and its vitality after Setser).

where it "did not rely solely on the presumption in § 3584(a)" but "conduct[ed] a review of petitioner's case pursuant to petitioner's *nunc pro tunc* request").

Brown, however, argues that the BOP's refusal to give him any credit through a *nunc pro tunc* designation was improper, offering two grounds to support this assertion. First, he argues that the federal sentencing court has told the BOP that it was not opposed to applying credit for this time period, and that the BOP thus acted improperly in denying him the credit. The Court disagrees.

The reasoning of the court in Loveless on this point is instructive. There, as here, the federal judgment was silent as to the consecutive versus concurrent determination, and the sentencing court had stated that it had "no objection to the BOP exercising its authority to grant [p]etitioner's request." The Court concluded the BOP did not act improperly in denying the petitioner's *nunc pro tunc* request and explained, even if the sentencing judge had recommended, post-judgment, that the BOP grant the designation *nunc pro tunc*, "the BOP is required only to consider the Court's recommendation as one of five factors in deciding whether [to] grant or deny [the] *nunc pro tunc* designation. It is under no statutory obligation to yield to the sentencing judge's recommendation, and indeed, to do so would be an abuse of discretion." 2012 WL 3614315, at *6 (citing Trowell v. Beeler, 135 F. App'x 590, 596 (4th Cir. 2005) (unpublished)).

Although a different judge from Brown's sentencing court stated that she did not oppose a concurrent designation, the BOP was only statutorily required to consider that as one of several factors under § 3621(b). The other factors include: the resources of the facility contemplated; the nature and circumstances of the offense; the history and characteristics of the prisoner; and any pertinent policy statement issued by the Sentencing Commission. 28 U.S.C. § 3621(b). Here, the BOP completed a worksheet that reflects a reasoned consideration of those factors. There is

nothing in the record to show that it acted improperly or contrary to law. In short, Brown has not presented any evidence to show that the BOP failed to follow its statutory directive or that it otherwise acted improperly simply because the sentencing court did not oppose the credit and indeed, thought the sentencing court might have intended it, despite not indicating as such in the judgment.

The second ground Brown advances to show that the BOP improperly denied him credit is that his federal and state sentences were for the "same offenses" and therefore the credit should be given against his federal sentence. For support, he points to Section 5G1.3(b) of the United States Sentencing Guidelines ("USSG"), and to two cases from other circuits that are inapposite. This argument, too, is unpersuasive.

First of all, unlike the two cases he cites for support, both of which involved prior versions of the Guidelines,[7] Brown was sentenced under the 2004 edition of the Guidelines Manual. ECF No. 15, PSR at 3, ¶ 16. Under the version of USSG § 5G1.3 then in effect and applied to Brown, concurrent sentencing with an undischarged state sentence was required only if the undischarged term of imprisonment "resulted from another offense that is relevant conduct" and "was the basis for an increase in the offense level" for the later-imposed offense. See, e.g., United States v. Schafer, 429 F.3d 789, 791-92 (8th Cir. 2005) (discussing the clarifying amendment to USSG § 5G1.3(b)). Arguably, Brown is correct that his state offense was considered relevant conduct and resulted in an increased offense level. ECF No. 15, PSR at 4 ¶¶ 21, 27 (applying a two-level increases for obstruction of justice and based on defendant's

---

[7] See United States v. Fuentes, 107 F.3d 1515, 1524 (11th Cir. 1997); United States v. Lynch, 378 F.3d 445 (5th Cir. 2004), abrogated on other grounds. Both were direct criminal appeals involving the proper application of USSG § 5G1.3 as it existed prior to Guideline Amendment 660, effective November 1, 2003. See, e.g., Fuentes, 107 F.3d at 1524; Lynch, 378 F.3d at 446 n.1 (noting that it is applying the pre-2003 version).

flight from law enforcement, which was also one of the state charges, see id. at 18, ¶¶ 58-59 (setting forth pending state charges)); see also ECF No. 11, Ex. 1-G (Judge Carnes' letter referencing same). The problem with Brown's argument, however, is more fundamental: Brown was not sentenced on his state charges until after his federal sentencing. Thus, he was not subject to any "undischarged term of imprisonment" under § 5G1.3. Accordingly, USSG § 5G1.3 did not require that the sentencing court run the offense concurrent with any state sentence.[8]

Having fully addressed Brown's contentions and having determined that the BOP did not act improperly or contrary to law, and thus that Brown's custody is not unlawful, the Court concludes that Brown has not established an entitlement to relief under § 2241.

## III. CONCLUSION

Brown has failed to show that he is entitled to credit to his federal sentence for any period prior to his release from state custody, on June 9, 2009. Nor has he shown that the BOP acted unconstitutionally in refusing to designate *nunc pro tunc* the institution where he was serving his state sentence. Accordingly, Respondent's Motion to Dismiss, ECF No. 11, is **GRANTED** and Petitioner's 28 U.S.C. § 2241 Petition, ECF No. 1, is **DENIED**. An appropriate order shall issue this day.

Petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals for the

---

[8] Additionally, to the extent Brown is challenging the sentence itself as improper, that is a claim that should have been asserted on direct appeal or, in extraordinary circumstances, under 28 U.S.C. § 2255. See United States v. Pregent, 190 F.3d 279, 284 (4th Cir. 1999) (holding that claims that a court erred in the application of the Sentencing Guidelines should be raised on direct appeal and that such claims are not generally cognizable in a § 2255 motion because they do not constitute a "miscarriage of justice"). It is not properly raised in this petition. See Atkinson v. Drew, No. 9:09-3219, 2010 WL 1038105, at *2 (D.S.C. Feb. 12, 2010) ("petitioner's allegations about the propriety of [a] sentencing enhancement . . . clearly go to the underlying validity of his sentence rather than to the manner of execution of the sentence. Such matters are not properly considered under § 2241" unless the savings clause of § 2241 applies).

Fourth Circuit or this court issues a certificate of appealability pursuant to § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). This Court finds that Petitioner has not made the requisite showing of denial of a substantial right. Accordingly, a certificate of appealability is **DENIED**. If Petitioner intends to appeal and seek a certificate of appealability from the Court of Appeals for the Fourth Circuit, his first step is to file a notice of appeal with this court within 30 days of the date of entry of the final order, or within such extended period as the court may grant pursuant to Rule 4(a)(5) of the Federal Rules of Appellate Procedure.

The Clerk is directed to send copies of this memorandum opinion and the accompanying final order to Petitioner and counsel of record for Respondent.

**ENTER:** This 31st day of October, 2012.

James C. Turk
Senior United States District Judge